**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**FREDERICK SELLERS,**

       **Plaintiff,**

**v.**                                     **CIVIL ACTION NO. 2:18cv1**
                                                        **(Judge Bailey)**

**EDDIE ANDERSON, D.O.,
JOHANN LEHMANN, PA,
RUTHIE CARSON, PA,**

       **Defendants.**

## REPORT AND RECOMMENDATION

### I.    Introduction

Plaintiff is a federal inmate presently confined at the Federal Correctional Institution, Fort Dix ("FCI Fort Dix") in Fort Dix, New Jersey, serving a 188-month sentence imposed on April 4, 2011, in the United States District Court for the District of New Jersey, following his conviction for violation of 21 U.S.C. §§ 841(a)(1) and 846, Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine. Plaintiff was previously confined at FCI Gilmer in Glenville, West Virginia. This is the fifth complaint that the plaintiff has filed regarding his medical care at FCI Gilmer, and, which can be succinctly described as his allegations that he underwent surgery for a nonexistent hernia.

This matter was referred to the undersigned pursuant to 28 U.S.C. § 1915A(b) for judicial review. For the reasons set forth below, this Court recommends that Plaintiff's complaint be dismissed on the theory of *res judicata* and in the alternative for failure to

exhaust his administrative grievances and to state a claim upon which relief can be granted.

## II.  Filing History

### A.  Plaintiff's First Federal Tort Claim

The first case was filed on September 9, 2015. That complaint was docketed as a Federal Tort Claims Act but named in addition to the United States of America, Ruthie Carson, Johann Lehmann, PA, St. Joseph Hospital and Salvator Lansana, MD. See 3:15cv108. On October 16, 2015, the plaintiff moved to voluntarily dismiss the complaint so that he could submit "a cleaner Tort and Bivens claim." On October 19, 2015, the case was dismissed without prejudice.

### B.  Plaintiff's Second Federal Tort Claim

On October 27, 2015, the plaintiff filed a civil action pursuant to the Federal Tort Claims Act ("FTCA"), related to what the plaintiff there described as "an ill-advised hernia operation".  2:15-CV-79, ECF No. 1 at 3.  On November 10, 2015, the Court entered an Order which notified the plaintiff that judgment under the FTCA action would, pursuant to 28 U.S.C. §§ 2674, 2676 constitute "a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the Government whose act or omission gave rise to the claim." 2:15-CV-79, ECF No. 10.

After the Government filed a motion to dismiss  or in the alternative motion for summary judgment, and the plaintiff responded, the Magistrate Judge entered a report and recommendation which recommended that the Government's motion to dismiss or for summary judgment be granted. On February 16, 2017, the District Court entered an order which adopted the Magistrate Judge's report and recommendation, granted the

Government's motion to dismiss or for summary judgment and dismissed the FTCA claim with prejudice.   Subsequently,  the plaintiff filed a notice of intent to appeal.  On June 23, 2017, the United States Court of Appeals for the Fourth Circuit  affirmed the dismissal of the plaintiff's unnecessary surgery claim but remanded the matter  to the District Court with directions to dismiss the claim without prejudice based on the lack of subject matter jurisdiction. On June 26, 2017, the District Court entered an order which explains that  "[p]ursuant to the Fourth Circuit's instructions, the plaintiff's unnecessary surgery claim is hereby dismissed without prejudice and the clerk's judgment is hereby amended to reflect the same." ECF No. 51.

### C.    Plaintiff's First <u>Bivens</u> Action

On  October  27,  2015, the plaintiff filed a civil action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>[1], 403 U.S. 388 (1971), related to what the plaintiff again described as "an ill-advised hernia operation".  3:15-CV-121, ECF No. 1 at 7.   On  June 28, 2017, a Report and Recommendation was filed that recommended the <u>Bivens</u> action be dismissed without prejudice based on the prior disposition of the plaintiff's claims under the Federal Tort Claim Act.  3:15-CV-121, ECF No. 32.   On October 11, 2017, the District Court entered an order which adopted the report and recommendation.  3:15-CV-121, ECF No. 35.

### D.    Plaintiff's § 1983 Action

On January 9, 2018, the plaintiff filed a civil rights complaint against St. Joseph Hospital and Salvator Lansana, MD, pursuant to 42 U.S.C. § 1983 alleging violations of

---

[1] As originally filed, this complaint named St. Joseph Hospital, Salvator Lansana, MD, Ruthie Carson, PA and the United States of America.  On March 16, 2016, the plaintiff filed an amended complaint which named only St. Joseph Hospital and Salvator Lansana MD.

3

his constitutional rights. 3:18cv3.   The Plaintiff's complaint listed two grounds for relief but included no supporting facts for either claim.   ECF No. 1 at 6, 7.   The plaintiff's first claim for relief alleged, "Deliberate indifference to plaintiff's medical needs.   Violating his 8th amend[ment] right by subjecting him to cruel and unusual punishment."   ECF No. 1 at 6.   The plaintiff's second claim for relief alleged, "Deliberat[e] indifference to serious medical needs in violation of the 8th amend. As well as showing gross negligence."   Id. at 7.   Plaintiff claimed he suffered, "Physical and emotional pain from an un[n]ecessary hernia operation."   Id. at 8.   In the relief section of the form complaint, where the plaintiff was instructed to "State BRIEFLY and EXACTLY what you want the Court to do for you," he essentially repeated his claims, "Violation of my 8th Amendment right when they subjected me to cruel and unusual punishment by unnecessarily performing a hernia operation and also being deliberately indifferent by the unnecessary and wanton infliction of pain."   Id.   (emphasis in original). On March 12, 2018, the plaintiff filed a six-page document which was construed to be an amended complaint. In it, the plaintiff claimed that on January 27, 2015, he suffered a "horrendous injury from an ill-advised hernia operation" performed by Salvator Lansana at St. Joseph's Hospital. ECF No. 15 at pp 2-3. The plaintiff also claimed that the defendants were "deliberately indifferent [to] the unnecessary and wanton infliction of pain." Id. The plaintiff sought $12,000,000 in total damages, requesting $3,000,000 in compensatory damages from each defendant and $3,000,000 in punitive damages from each defendant, plus costs and fees. Id. at p. 6. On January 25, 2018, a Report and Recommendation was entered which concluded that neither defendant was a state actor.   On May 14, 2019, the Report and Recommendation was adopted in part and the case was dismissed with prejudice.

**E. Instant Bivens Action**

In the instant case, which was filed on the same date as his § 1983 action, the plaintiff names three defendants. He describes Eddie Anderson, D.O. as the residential doctor at FCI Gilmer. In addition, he describes both Johann Lehmann and Ruthie Carson as PAs employed by the Bureau of Prisons at FCI Gilmer. With respect to Dr. Anderson, the plaintiff states:

> [H]e has a wide range of discretion and the willing authority to look over every medical document that crosses his desk. Documents pertaining to medical trips for operations. Had he been more observant in his duties he would've recognized that prior to Oct. 14, 2014 the alleged date Ms. Lehmann observed the plaintiff he would've recognized that the plaintiff had X-ray done which showed no hernias or abdominal abnormalities.

ECF No. 1 at p. 7.

With respect to Johann Lehmann, the plaintiff states:

> [I]n her reckless disregard mixed the plaintiff's medical records up with another inmates. This act created this horrific ordeal. She made extensive notes within the medical documents. Notes pertaining regarding healthier habits. As well as her advice regarding healthier habits. None of these occurrences ever transpired with the plaintiff.

ECF N0. 1 at p. 8.

Finally, with respect to Ruthie Carlson, the plaintiff states that

> [S]he disregarded the surgeon's instructions to post operation care. She came to the plaintiff's room the evening of the surgery and observed the plaintiff's wound. She advised him that she'd return the following day to clean the wound and provide new bandages. By the time Ms. Carlson was seen a week had passed and the plaintiff's wound was badly infected. She was extremely unprofessional and aggressive to the plaintiff by yelling at him and stuffing the gauze in his shirt pocket. She personally and deliberately failed to follow the surgeon's orders. She also falsified documents by saying she followed all his orders.

Id.

The plaintiff alleges  that the named defendants caused him "physical and emotional pain from an unnecessary hernia operation [which has left him with] a permanent scar on [his] stomach] and God knows what internal damage from being cut open." ECF No. 1 at p. 9. He also alleges that he suffers from anxiety. For relief, he seeks $3,000,000 in damages.

### III.  Standard of Review

#### A.      Pro Se Litigant

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious.  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual

> contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

The plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, supra, at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's

obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

### IV.    Analysis

#### A.  Res Judicata

The Latin phrase "*res judicata*," translated literally into English as "a thing decided," see BLACK'S LAW DICTIONARY 1470 (rev. 4th ed. 1968), is the name of a legal doctrine that "bars a party from relitigating a claim that was decided *or could have been decided* in an original suit." Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161 (4th Cir. 2008) (emphasis added). Whether two cases implicate the same cause of action turns on whether they share the same "nucleus of facts." Page v. United States, 234 U.S. App. D.C. 332, 729 F.2d 818, 820 (D.C. Cir. 1984). The doctrine was "designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" Id. at 161-62 (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979)); see also Montana v. United States, 440 U.S. 147, 153-54 (1979) (recognizing that *res judicata* avoids the "expense and vexation attending multiple lawsuits,

conserves judicial resources," and avoids "inconsistent decisions"). Put differently, it "serves not only 'the defendant's interest in avoiding the burden of twice defending a suit,' but also the important judicial interest in avoiding resolution of an issue that the court has already decided." Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 (4th Cir. 2006).

The undersigned first explains his decision to consider the issue of *res judicata* *sua sponte*. R*es judicata* is an affirmative defense that typically must be raised by an opposing party. Fed. R. Civ. P. 12. Nevertheless, a court may raise issues of preclusion in "special circumstances," even though the defense has not been raised. Arizona v. California, 530 U.S. 392, 412 (2000) (quoting United States v. Sioux Nation, 448 US 371, 432 (1980) (Rehnquist, J., dissenting) "internal quotation marks omitted)). See also Eriline Co. S.A., 440 F.3d at 655 (determining *res judicata* may be raised and considered *sua sponte* because it implicates important institutional interests of the judiciary); *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (finding that district court did not err by raising the issue of collateral estoppel on its own because of the "strong public policy in economizing the use of judicial resources of avoiding relitigation").

"Special circumstances" exists where "a court is on notice that it has previously decided the issue presented." Arizona, 530 US at 412; see also Saudi v. V. Ship Switz S.A., 93 F. App'x 516, 520-21 (4th Cir. 2004) ("[G]iven the indisputable privity of the parties and the identity of the issues between the instant case and the case upon which the *res judicata* holding rested, we believe that *sua sponte* invocation of the bar was permissible."). Likewise, the court may invoke *res judicata* on its own where "all relevant data and legal records are before the court and the demands of comity, continuity in the

law, and essential justice mandate judicial invocation of the principles of *res judicata*." Carbonell v. La. Dep' of Health and Human Res., 772 F.2d 185, 189 (5th Cir. 1985). Given the substantial factual overlap between the plaintiff's previously filed and decided FTCA claim, Bivens claim and 1983 claim, the undersigned believes that the interests of justice and concerns for judicial efficiency support a *sua sponte* consideration of *res judicata*.

The application of *res judicata* turns on the existence of  three factors: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." Clodfelter v. Rep. of Sudan, 720 F.3d 199, 210 (4th Cir. 2013) (quoting Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004)). The factors are given broad application with an aim to "eliminate vexation and expense to the parties, waste and use of judicial machinery and the possibility of inconsistent results." Thomas v. Consolidation Coal Co., 380 F.2d 69, 77 (4th Cir. 1967). To that end, the Fourth  Circuit has made clear that "[t]he preclusive effect of a prior judgment extends beyond claims or defenses actually presented in previous litigation." Meekins v. United Transp. Uni, 946 F.2d 1054, 1057 (4th Cir. 1991). "Not only does *res judicata* bar claims that were raised and fully litigated, it 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" Peugeot, 892 F.2d at 359 (quoting Brown v. Felsen, 442 U.S.127, 131 (4th Cir. 1979)). "By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, 'res judicata . . .  encourages reliance on judicial decisions, bars vexatious

litigation, and frees the court to resolve other disputes. <u>Pueschel</u>, 369 F.3d at 354 (quoting <u>Brown</u>, 442 U.S.at 131)).

"There is no simple test to determine what constitutes the same cause of action for res judicata purposes," <u>Aliff v. Joy Manufacturing Co.</u>, 914 F.2d 39, 43 (4th Cir. 1990). Courts look primarily to whether the claims arise from the same factual basis. <u>See</u> <u>id.</u> This broad "transactional approach" requires this Court to decide whether the plaintiff's claims "arise out of the same transaction or series of transactions or the same core of operative facts" at issue in the plaintiff's previous cases outlined above. <u>Pueschel</u>. 369 F.3d at 355 (quoting <u>In re Varst Enters., Inc.</u>, 81 F.3d 1310, 1316 (4th Cir. 1996) (internal quotation marks omitted)); <u>see also</u> <u>Meekins</u>, 946 F.2d at 1058 (describing the transactional approach). This Court must "presume that a litigant has 'done his legal and factual homework,' and raised all grounds arising out of the same factual context to support his claims." <u>Peugeot Motors</u>, 892 F.2d at 359 (citing <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 789 F.2d 589, 596 (7th Cir. 1986)).

Having carefully reviewed the plaintiff's previous cases filed regarding his "ill advised" hernia operation, the undersigned finds that the instant complaint concerns the same basic claim, arises from the same core of operative facts and could have been raised in conjunction with his FTCA complaint or in his earlier filed <u>Bivens</u> complaint. Therefore, the undersigned concludes that the plaintiff is precluded from pursuing the instant complaint. However, in the event the Court disagrees, the undersigned has analyzed the merits of the plaintiff's complaint.

### B.  Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with

respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997(e)(a).  Exhaustion as provided in § 1997(e)(a) is mandatory.  Booth v. Churner, 532 U.S. 731, 741 (2001).  A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available.  Booth, at 741.  Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court.  See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits."  Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion."  Woodford, at 92-94 (emphasis added).  Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system.  Id. at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8).   See 28 C.F.R. § 542.10, et seq.  If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the

---

[2] Id.

complaint is based.  If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[3]  An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels.  28 C.F.R.§ 542.10-542.15; <u>Gibbs v. Bureau of Prison Office, FCI</u>, 986 F.Supp. 941, 943 (D.Md. 1997).

In <u>Jones v. Bock</u>, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint.  Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint.  *See* <u>Anderson v. XYZ Prison Health Services</u>, 407 F.3d 674, 681-82 (4th Cir. 2005).

In the instant case, the plaintiff has submitted copies of his administrative grievances. His BP-8, which was filed on February 8, 2015, complained that health services erroneously scheduled a hernia operation for him, a hernia that he was never diagnosed with nor had. No response was made by the medical department. Thereafter,

---

[3] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

he filed a BP-9 on March 3, 2015, in which he indicated that he wanted Health Services to acknowledge that he was sent for surgery he did not need. The plaintiff's request was denied on March 20, 2015. On March 30, 2015, the plaintiff filed his BP-10, or Regional Appeal, again asserting that he was scheduled for a hernia surgery, even though he did not have a hernia. On April 9, 2015, the plaintiff was issued a response for informational purposes and advised that he could appeal to General Counsel. On April 14, 2015, the plaintiff prepared his BP-11, and for the first time identifies PA-Lehmann and suggests that someone else's medical records were mixed up with his. On October 3, 2016 the Administrator for National Inmate Appeals responded, thus concluding the administrative remedy program.

However, it is pertinent to note that the plaintiff never mentions Dr. Anderson nor Ruthie Carson. Furthermore, his grievances revolve solely around what he alleges was an unnecessary hernia surgery, and he never mentions any inadequate post-surgical care resulting in an infection and scar.    Therefore, although a liberal reading establishes that he has exhausted his grievance with respect to Johann Lehman and his allegations that his medical records were mixed up with someone else's, he did not raise, and therefore has not exhausted his claims against Dr. Anderson's alleged failure to perceive the mix up, nor his claim against Ruthie Carson that she disregarded the instructions for post-operative care and "caused" his wound to become badly infected.

### C.    Deliberate Indifference[4]

In   evaluating   the   plaintiff's   construed   claim   of   deliberate   indifference,   the

---

[4] The undersigned notes that nowhere in his complaint does the plaintiff allege a constitutional violation. Therefore, the case could simply be dismissed for failure to state a claim without further analysis. However, given the plaintiff's status as a pro se litigant, the undersigned has construed the complaint as raising a claim of deliberate indifference.

undersigned first sets forth the pertinent medical history.[5]  The plaintiff was evaluated by defendant Johanna Lehmann, PA-C at sick call on October 14, 2014, complaining of a painful rash on his back for the last week.   Defendant Lehman noted that he needed counseling on his recent lab values, as his diabetes was not controlled, his lipids were now a risk factor for him, and his blood pressure was "terrible." Examination revealed a dermatome from left back to center chest in the T4-5 region, and a healing discrete rash of scaling, scabbed, 1-2 mm lesions along the linear line of the dermatome. Under the abdomen and inspection portion of the note, it stated that the patient has "two hernias on either side of the scar." It also stated that the scar is a "result of stabbing injury" and " pt. denies need for temporary ostomy." New medications were ordered including Acyclovir and carabamazepine. A general surgery consultation request was entered for evaluation and treatment plan for ventral incisional hernias.

On January 27, 2015, the plaintiff underwent surgery to repair a ventral hernia at St. Joseph's Hospital in Buckhannon, West Virginia. The plaintiff signed forms consenting to the treatment, surgery, and anesthesia. He returned to the institution the same day, where he was evaluated in Health Services upon intake by Ruthie Carlson, RN.  He had no complaints, and stated "I am fine, I didn't even know I had a hernia." Defendant Carlson noted that he had a dressing under an abdominal binder over the umbilicus area with no signs of new bleeding. He was provided instructions for no lifting over 10 pounds and wearing an abdominal binder for three months. He was advised that he could shower and return to work in two weeks. Defendant

---

[5] The information in this section is taken from the Declaration of Eddie Anderson, D.O. ECF No. 29-2 at pp 2-4 in Civil Action No. 2:15cv79 . The medical records supporting his declaration are attached thereto as exhibits. ECF No. 29-3 – 29-6.

Carlson also noted the old dressing would be removed twenty-four hours post op. She also issued an idle, or Medical Duty Status form, placing the plaintiff on lifting restriction "nothing over 10 pounds", and a work/school idle to return to work in two weeks. He was permitted to have an abdominal binder for three months.

On February 9, 2015, the plaintiff reported to sick call stating that his incision was infected. Physician Assistant Alicia Wilson noted umbilicus with purulent discharge, no erythema. Cultures were taken and antibiotics prescribed. On February 18, 2015, based upon the results of the culture, another medication was added for the plaintiff's infection based on the results of the culture.

The plaintiff was examined by nurse on February 20, 2015, for post-operative evaluation, and the clinical notes indicated a small amount of serosanguinous drainage was observed, with no redness, swelling, or fever. On February 23, 2015, the plaintiff was evaluated in Chronic Care Clinic. Dr. Anderson noted that the surgical wound was well-approximated and healing, but with an area of 0.5 cm granulation tissue and a small amount of a clear discharge. There was no swelling, odor, or redness. Dr. Anderson wrote a general surgery consultation request for the wound granuloma, as he did not think that it would resolve on its own. The plaintiff was also issued gauze sponges and tape. On May 11, 2015, the plaintiff signed a Medical Treatment Refusal form declining to go for outside treatment for his wound granuloma, as requested by Dr. Anderson. From then until May 17, 2016, when the medical records available to the court end, there is no further mention of the hernia surgery.

The Eighth Amendment protects prisoners from punishments which "'involve the

unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). These principles apply to the conditions of confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; See also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (explaining that both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment).

To establish a violation of the Eighth Amendment with respect to medical care, an inmate must prove two elements. See Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). First, the inmate must objectively prove that the deprivation of medical care was "sufficiently serious." Id. Second, the inmate must subjectively prove that prison staff acted with a "sufficiently culpable state of mind." Id.

The objective element is satisfied by proof of the inmate having a serious medical need. Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). A serious medical need can also exist if a delay in treatment would cause a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[6]

---

[6] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning

The subjective element is satisfied by showing deliberate indifference by prison staff.  Johnson, 145 F.3d at 167.  The Fourth Circuit has summarized what constitutes deliberate indifference:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness.  Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. Nevertheless, mere negligence or malpractice does not violate the eighth amendment.

Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990) (citations omitted). Furthermore, so long as the medical treatment given is adequate, the fact that an inmate would have preferred a different type of care does not constitute deliberate indifference. Chance v. Armstrong, 143 F.3d 698, 703 (2nd Cir. 1998).  Similarly, the fact that other medical professionals would have pursued a different type of treatment does not, by itself, establish deliberate indifference. Hanson v. Smith, 9 F.3d 1557 (10th Cir. 1993). Accordingly, deliberate indifference is "generally not found when some significant

---

v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998). A degenerative hip a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978).

level of medical care has been offered to the inmate." Atwater v. Gabriel, 2012 WL 750754 (M.D.Pa. 2012).

The undersigned begins by noting that this Court has previously acknowledged in its decision in the plaintiff's FTCA claim that the electronic medical records from the plaintiff's encounter with Johanna Lehmann, dated October 14, 2014 somehow included notes that did not pertain to the plaintiff. As previously stated, those notes indicated that he was observed to have an incisional hernia[7] on either side of a scar which resulted from a stabbing injury.[8] See 2:15cv79 (ECF No. 29-1 at 10).

To the extent that the medical records prepared by FCI Gilmer, and defendant Lehmann, caused the plaintiff to be sent for surgical repair of an incisional hernia, the same does not establish deliberate indifference, but instead, sounds in negligence. Moreover, and more importantly, on January 27, 2015, the plaintiff arrived at St. Joseph's Hospital and signed an informed consent to undergo surgery to repair ventral[9]-incisional hernias which were diagnosed by Salvatore Lansana, MD. The operative report, prepared by Salvatore Labasa, MD, indicates that:

> The [plaintiff] under general anesthesia was prepped and draped in a sterile manner. There was a herniation on the midline just above the umbilicus for about 2 inches and included the umbilicus as well. What we did was an incision through the skin and subcutaneous tissue dissecting the sac. This seemed to contain just preperitoneal fat. The sack, without entering the abdominal cavity, was dissected and pushed down into the abdominal cavity. After that, repair of the hernia defect was done by approximating the fascial edges with the running sutures of Prolene.

---

[7] An incisional hernia is  a hernia that occurs through a previously made incision in the wall, i.e., the scar left from a previous surgical operation.

[8] In the course of his FTCA litigation, the plaintiff alleged that he had never been stabbed, and the United States did not dispute that allegation.  Accordingly, the portion of the October 14, 2014 clinical encounter which references a stabbing injury is clearly erroneous and most likely pertains to another inmate.

[9] Ventral refers to the front/belly of an organism.

Marcaine was injected for postoperative pain control and the skin was approximated with 4-0 Vicryl. Dressing was applied and the procedure was completed.

ECF No. 29-6 at 10 (2:15cv79).

Therefore, although the plaintiff did not have two incisional hernias, he did have an umbilical hernia which was repaired by Dr. Lansana. Accordingly, there is simply no evidence or allegation that satisfies the two elements necessary to establish a violation of the Eighth Amendment.   Again, at best, the plaintiff's allegation that defendant Lehmann mixed his records up with that of another inmate may establish negligence, but mere negligence or malpractice does the violate the Eighth Amendment.

## V.  RECOMMENDATION

For the foregoing reasons, this Court **RECOMMENDS** that the Complaint [ECF No. 1] be **DISMISSED WITH PREJUDICE** applying the principle of *res judicata.* In the alternative, the undersigned **RECOMMENDS** that the Plaintiff's complaint as to defendants Anderson and Carlson be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies, and as to defendant Lehmann be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

The Plaintiff shall have fourteen days from the date of entry of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District  Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave  to exceed the page  limitations, consistent

with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known   address as shown on the docket. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED:  May 26, 2020

*/s. James P. Mazzone*

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE